UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BC IMMIGRATION FUND LLC f/k/a
THREE STREAMS RADIUS, LLC, and
BREVET ASSET SOLUTIONS, LLC,

                Plaintiffs,

        v.

VETRO BUILDING ENVELOPE, LLC,
JEFFREY JENNINGS, and ARTHUR
BURKINDINE, JR.

                Defendants.

Case No: 17-cv-00183-RA

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND PURSUANT TO FEDERAL RULE 12(b)(3), OR IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6) AND 12(b)(7)

Carol A. Sigmond, Esq.
Thomas E. Raccuia, Esq.
COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, P.C.
55 Broadway, Suite 901
New York, New York 10006
P:  (212) 871-7400
csigmond@cohenseglias.com
traccuia@cohenseglias.com

*Of Counsel:*
Kenneth B. Frank, Esq.
KENNETH B. FRANK, PA
1808 Dixon Road
Baltimore, Maryland
(443) 345-2600
kenny@kennyfrank.net

*Attorneys for Defendants,*
*Vetro Building Envelope, LLC,*
*Jeffrey Jennings, and Arthur Burkindine, Jr.*

February 8, 2017

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................2

I.     The Complaint Must Be Dismissed Because The Southern District Of New York Is Not A Proper Venue...............................................................2

     A.     Standard for Motion to Dismiss Based on Improper Venue..................3

     B.     The Events Giving Rise to this Action Occurred in Maryland .................................................................................................3

     C.     The Forum-Selection Clauses are Unenforceable.................................5

          i.     The Credit and Security Agreement ........................................6

          ii.     The Amended and Restated Guarantee and Pledge Agreement ..............................................................................6

II.     Alternatively, This Action Should Be Transferred To The District of Maryland...........................................................................................7

     A.     Convenience of Parties and Witnesses .................................................8

     B.     Locus of Operative Facts .....................................................................9

     C.     Plaintiffs' Choice of Forum ...............................................................10

     D.     Location of Relevant Documents........................................................10

     E.     Availability of Process to Compel the Attendance of Unwilling Witnesses .......................................................................10

     F.     Relative Means of the Parties .............................................................11

III.     The Complaint Must be Dismissed Because Plaintiffs Have Failed To Join A Necessary And Indispensable Party: K4..........................................11

     A.     Standard on Motion to Dismiss for Nonjoinder...................................11

     B.     K4 is a Necessary Party ......................................................................12

     C.     K4 Cannot Be Joined .........................................................................13

i

D.      K4 Is an Indispensable Party...............................................................14

IV.     In The Alternative, The Complaint Must Be Dismissed For Failure
        To State A Claim Pursuant To Federal Rule 12(b)(6) ....................................15

        A.      Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)................15

        B.      The Complaint Fails to State a Claim for Fraudulent
                Inducement...........................................................................................16

        C.      The Complaint Fails to State a Claim for Tortious
                Interference with  Contractual Relations ............................................17

        D.      The Complaint Fails to State a Claim for Unjust
                Enrichment ...........................................................................................19

        F.      Plaintiffs' Claim for Conversion as it Pertains to Jennings'
                Alleged Misappropriation of K4 Funds Should be
                Dismissed for Failure to State a Claim ...............................................20

        G.      The Complaint Fails to State a Claim for Breach of
                Contract.................................................................................................21

        H.      Plaintiffs' Claims for "Breach of Contract – Amended
                Guarantee" and "Declaratory Judgment – Amended
                Guarantee" Should Be Dismissed For Failure to State a
                Claim.....................................................................................................22

CONCLUSION.........................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*9310 Third Ave. Assoc. v. Schaffer Food Serv. Co.*,
    210 A.D.2d 207, 620 N.Y.S.2d 255 (2d Dept. 1994) ............................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................15, 16

*Aymes v. Gateway Demolition, Inc.*,
    30 A.D. 3d 196, 817 N.Y.S. 2d 233 (1st Dep't 2006) ......................................19

*Balance Point Divorce Funding, LLC v. Scrantom*,
    978 F. Supp. 2d 341 (S.D.N.Y. 2013)...................................................................8

*Balestriere PLLC v. CMA Trading, Inc.*,
    No. 11 Civ. 9459-MHD, 2014 WL 929813 (S.D.N.Y. March 6, 2014) ................14

*Bank of Am., N.A. v. Wilmington Trust FSB*,
    943 F. Supp. 2d 417 (S.D.N.Y. 2013)...................................................................7

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
    813 F.Supp. 2d 569 (S.D.N.Y. 2011)..................................................................16

*Baylis v. Marriott Corp.*,
    906 F.2d 874 (2d Cir. 1990)................................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................16

*Boehner v. Heise*,
    410 F.Supp.2d 228 (S.D.N.Y.2006).......................................................................3

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)................................................................................15

*Clearmont Prop., LLC v. Eisner*,
    58 A.D. 3d, 872 N.Y.S.2d 725 ...........................................................................17

*Dickerson v. Novartis Corp.*,
    315 F.R.D. 18 (S.D.N.Y. 2016) .............................................................................8

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir.2001).....................................................................................3

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
    928 F. Supp. 2d 735 (S.D.N.Y. 2013).............................................................9, 10

*First Capital Asset Mgmt., Inc. v. Satinwood Inc.*,
   385 F.3d 159 (2d Cir. 2004)...................................................................................16

*Fitzpatrick Constr. Corp. v. County of Suffolk*,
   138 A.D. 2d 446, 525 N.Y.S.2d...............................................................................18

*Gordian Grp., LLC v. Syringa Expl., Inc.*,
   168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016)...........................................................6, 7

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*,
   742 F.Supp.2d 446 (S.D.N.Y.2010)........................................................................11

*Gulf Ins. Co. v. Glasbrenner*,
   417 F.3d 353 (2d Cir.2005).......................................................................................3

*Handelsman v. Bedford Village Associates Ltd. Partnership*,
   213 F.3d 48 (2d Cir. 2000)......................................................................................13

*The High View Fund, L.P. v. Hall*,
   27 F.Supp.2d 420 (E.D.N.Y. 1998) ........................................................................20

*Highland Capital Mgmt. v. Schneider*,
   607 F.3d 322 (2d Cir. 2010)....................................................................................22

*Hines v. Overstock.com*,
   668 F.Supp.2d 362 (E.D.N.Y. 2009) ......................................................................21

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
   419 F. Supp. 2d 395 (S.D.N.Y. 2005)....................................................................8, 9

*Joseph Martin, Jr., Deli v. Schumacher*,
   52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E. 2d 541 (1981)..................................22

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)....................................................................................17

*Manufacturers Hanover Trust Co. v. Chemical Bank*,
   160 A.D.2d 113, 559 N.Y.S.2d 704 (1st Dept. 1990)............................................20

*Maryland Cas. Co. v. W.R. Grace and Co.*,
   23 F.3d 617 (2d Cir. 1993)......................................................................................13

*MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*,
   No. 03–CV–7157 (WHP), 2004 WL 1368299 (S.D.N.Y. June 16, 2004) .............11

*Meese v. Miller*,
   79 A.D. 2d 237, 436 N.Y.S. 2d 496 (4th Dep't. 1981)...........................................19

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
   84 F.3d 560 (2d Cir.1996)................................................................................................3

*Mills v. Polar Mechanical Corp.*,
   12 F.3d 1170 (2d Cir. 1993)...........................................................................................16

*Minnette v. Time Warner.*
   997 F.2d 1023 (2d Cir.1993)............................................................................................7

*Mondo, Inc. v. Sirco Int'l. Corp.*,
   1998 WL 849401 (S.D.N.Y. 1998)................................................................................22

*Murphy v. 317-319 Second Realty LLC*,
   95 A.D. 3d 443, 944 N.Y.S.2d 42 (1st Dep't. 2012) .....................................................19

*NBT Bancorp v. Fleet/Norstar Fin. Group.*
   159 A.D. 2d 902, 553 N.Y.S.2d 864 (3d Dep't 1990) ...................................................18

*Nematron Corp. Secs. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998)................................................................................9

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   *599 F.3d 102 (2d Cir. 2010)*............................................................................................8

*NYSE Specialist Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007)..............................................................................................15

*Reiss v. Societe Centrale du Group Des Assurances Nationales*,
   235 F.3d 738 (2d Cir. 2000)............................................................................................23

*Rindfleisch v. Gentiva Health Sys., Inc.*,
   752 F. Supp. 2d 246 (E.D.N.Y. 2010) ............................................................................10

*Rosen v. Ritz-Carlton Hotel Co. LLC*,
   No. 14-CV-1385 RJS, 2015 WL 64736 (S.D.N.Y. Jan. 5, 2015)..................................10

*Savoy Senior Hous. Corp. v. TRBC Ministries*,
   401 B.R. 589 (S.D.N.Y.2009)............................................................................................3

*Schwartz v. Washington Mut., Inc.*,
   487 F. Supp. 2d 236 (E.D.N.Y. 2007) ............................................................................15

*Spiciarich v. Mexican Radio Corp.*,
   No. 14-CV-9009-SHS, 2015 WL 4191532 (S.D.N.Y. July 10, 2015) .............................9

*Steck v. Santander Consumer USA Holdings Inc.*,
   No. 14-CV-6942 JPO, 2015 WL 3767445 (S.D.N.Y. June 17, 2015)............................10

*Tarowski v. American Airlines*, *Inc.*,
    2002 WL 31956009 (E.D.N.Y. 2002)..................................................................21

*Themis Capital, LLC v. Democratic Republic of Congo*,
    881 F.Supp.2d 508 (S.D.N.Y. 2012)..................................................................22

*United States v. Sweeny*,
    418 F.Supp.2d 492 (S.D.N.Y.2006)..................................................................12

*Viera v. Basf Catalysts LLC*,
    No. 15-CV-3952-JPO, 2015 WL 9302836 (S.D.N.Y. Dec. 21, 2015) ....................10

*Wang v. Phoenix Satellite Television US, Inc.*,
    No. 13-CV-218 (PKC), 2014 WL 116220 (S.D.N.Y. Jan. 13, 2014).......................8

*Wolff v. Rare Medium, Inc.*,
    171 F.Supp.2d 354 (S.D.N.Y. 2001)..................................................................18

*Wynn v. AC Rochesters*,
    273 F.3d 153 (2d Cir. 2001)..............................................................................16

**Statutes**

28 U.S.C. ..................................................................................................................7, 14

28 U.S.C. § 1391(b)(2) .........................................................................................2, 3, 5, 8, 14

**Other Authorities**

Fed.R.Civ.P. 12(b)(3), 12(b)(6) and 12(b)(7) ........................................................1,2,15,24

Fed.R.Civ.P. 19 and 20 ...........................................................................................2,11,12,13,14

Rule 9(b) ..................................................................................................................16, 17

Rule 45 ....................................................................................................................11

## PRELIMINARY STATEMENT

Defendants, Vetro Building Envelope, LLC ("Vetro"), Jeffrey Jennings ("Jennings"), and Arthur Burkindine, Jr. ("Burkindine") (collectively, "Defendants") submit this Memorandum in support of their Motion to Dismiss and/or Transfer to the U.S. District Court for the District of Maryland, or in the Alternative, to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) and 12(b)(7).

In this matter, Plaintiffs, BC Immigration Fund LLC f/k/a Three Streams Radius, LLC ("BCI"), and Brevet Asset Solutions, LLC ("Brevet") (collectively, "Plaintiffs") have filed a Complaint (the "Complaint") consisting of seven counts: Count I for "Fraudulent Inducement," Count II for "Conversion," Count III for "Tortious Interference with Contractual Relations," Count IV for "Unjust Enrichment," Count V for "Breach of Contract—Agreement to Repay Funds," Count VI for "Breach of Contract—Amended Guarantee," and Count VII for "Declaratory Judgment—Amended Guarantee."   (A true and correct copy of the Complaint is attached as Exhibit A).

Although, as discussed below, many of these counts make no sense in the context of the parties actually named in this lawsuit, the overall essence of the Complaint is that Jennings and Burkindine secretly formed Vetro and never disclosed their ownership in the company to the executives of non-party, K4 Associates, LLC ("K4"), which led Plaintiffs to believe that Vetro was owned by K4.  As a result, Plaintiffs were induced to loan money to K4, and Defendants have absconded with approximately $3 million that K4 invested in Vetro.  In the course of the Complaint, Defendants are accused of embezzlement, conversion, and misappropriation for funds for their own use.[1]

---

[1]     Virtually the entire Complaint is based on a serious of allegations that are demonstrably false.  Defendants intend to address this issue further, as permitted pursuant to the Federal Rules of Civil Procedure.

The Complaint, which is so convoluted in style and content as to be virtually incomprehensible, is remarkable for what has been omitted – namely the absence of a necessary and indispensable party, K-4 Associates, LLC ("K4"), as a plaintiff in this action.  Although the so-called "Bevet Loan," which forms the basis for all of the causes of action, was made by Brevet to K4 (who, in turn, invested that $3,100,000 in Vetro), it is Brevet, not K4, who is seeking to recover the allegedly misappropriated funds from Defendants.  *See* Complaint, ¶¶ 51-53, 58.  As explained below, since K4 is a necessary and indispensable party, and is incapable of being joined due to Fed.R.Civ.P. 19(a)'s prohibition on joining a party if the joinder would deprive the court of subject matter jurisdiction, Rule 19(b) requires the dismissal of this action.  Accordingly, Defendants have moved for dismissal pursuant to Rule 12(b)(7).

Defendants also move to dismiss this action, or, alternatively, to transfer it to the District of Maryland, Southern Division, pursuant to Rule 12(b)(3) because venue is not proper in this Court.  Pursuant to 28 U.S.C. § 1391(b)(2), an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  However, a fair reading of the factual allegations in the Complaint demonstrates that almost all of the alleged events giving rise to this action took place in the District of Maryland, not the Southern District of New York.

Finally, and in the alternative, Defendants have moved to dismiss certain of the claims as to all or some of the defendants for failure to state a claim pursuant to Rule 12(b)(6).

## ARGUMENT

**I.     The Complaint Must Be Dismissed Because The Southern District Of New York Is Not A Proper Venue**

This action should be dismissed, or alternatively, transferred to the District of Maryland, Southern Division, because the Southern District of New York is not a proper venue under 28

2

U.S.C. § 1391(b)(2).  Venue is not proper in this district because no substantial part of the events giving rise to this action took place in the New York, and virtually all of them occurred in the District of Maryland.  Moreover, the forum-selection clauses Plaintiffs rely upon to lay venue in this district are invalid.

### A.   Standard for Motion to Dismiss Based on Improper Venue

The standard for a motion to dismiss due to improper venue is the same as for a motion to dismiss due to lack of personal jurisdiction.  *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir.2005). When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper.  *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001); *Savoy Senior Hous. Corp. v. TRBC Ministries,* 401 B.R. 589, 596 (S.D.N.Y.2009).  And while the court generally must credit the plaintiff's factual allegations to be true, *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996); *Boehner v. Heise,* 410 F.Supp.2d 228, 240 (S.D.N.Y.2006), it may rely on materials outside the pleadings when ruling on such motions. *Gulf Ins. Co.,* 417 F .3d at 355; *DiStefano,* 286 F.3d at 84.

### B.   The Events Giving Rise to this Action Occurred in Maryland

Under section 1391(b)(2), an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  There is no dispute that this action does not concern property.  The operative inquiry under section 1391, therefore, is the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."

Plaintiffs assert that "many of the events, misrepresentations and omissions giving rise to the claims at issue herein occurred in this judicial district," and there "have been several meetings between Plaintiffs and Defendants at Plaintiffs' office in this district."  Complaint, ¶ 5, 7.  However, a plain reading of the factual allegations in the Complaint demonstrates that this is

not the case, and, in fact, almost all of the alleged events[2] giving rise to this action took place in

the District of Maryland:

- "K-4's business address is 649b Lofstrand Lane, Rockville, Maryland."  Complaint, ¶ 14.

- "Until May 2016, Jennings was the Chief Operating Officer ("COO") of K-4."  Complaint, ¶ 18.

- "Until May 2016, Burkindine was an employee of K-4."  Complaint, ¶ 19.

- "On November 26, 2014, Jennings and Burkindine filed articles of organization for Vetro with the Maryland Department of Assessments and Taxation."  Complaint, ¶ 22.

- "At the time of the events set forth herein, Vetro's articles of organization stated that Vetro's address was 649b Lofstrand Lane, Rockville, Maryland."  Complaint, ¶ 24.

- "The 2015 Business Plan was prepared in significant part by Jennings, acting in his capacity as K-4's COO."  Complaint, ¶ 27.

- ". . . Jennings was heavily involved in the preparation of the 2016 Business Plan in his capacity as K-4's COO."  Complaint, ¶ 36.

- "In October of 2015, Vetro entered into a contract with Gamma USA, Inc. to install windows at a construction project known as the MGM Casino at the National Harbor."  Complaint, ¶ 47.[3]

- "Jennings and Burkindine operated Vetro using K-4 employees, who were all on K-4's payroll until May of 2016 . . . ."  Complaint, ¶ 63.

- ". . .[O]n or about March 21, 2016, Jennings used his position as COO of K-4 to transfer the funds held in the EagleBank Account to the M&T Account . . . ."  Complaint, ¶ 81.

- " . . .[I]n May of 2016, Jennings, Burkindine, Donald Taylor, Deborah Gladstone, Patricia Harris and Allen Gordish – all K-4 employees who had been operating Vetro while employed with K-

---

[2]      Defendants do not admit the truth of the allegations in the Complaint quoted here, but, rather, present them to demonstrate that Plaintiffs' version of the facts demonstrates a series of events taking place almost entirely in Maryland.

[3]      The MGM National Harbor casino is located in Oxon Hill, Maryland.  *See* https://www.mgmnationalharbor.com/en/contact-us.html

4 – terminated their employment with K-4 and declared themselves employees of Vetro . . . ." Complaint, ¶ 86.

- " . . . Jennings, while an officer of K-4 and prior to his defection from K-4, embezzled and misappropriated a portion of collateral for the Brevet Loan by diverting K-4 funds for his own personal use." Complaint, ¶ 93.

While the Complaint does not set forth specific locations at which every one of the alleged events set forth above occurred, by and large, they concern the actions of Jennings and Burkindine in relation to K4 and Vetro, both of which are located in Rockville, Maryland. *See* Complaint, ¶ 14, 24. By contrast, the only specific factual allegations in the Complaint regarding events or activities that took place in the Southern District of New York are as follows:

- "Jennings met with representatives of Brevet in New York City for purposes of inducing Brevet to lend additional money to K-4 in connection with the MGM Casino Contract . . . " Complaint, ¶ 61.

- "During the negotiations over the new loan agreement, Jennings traveled to Brevet's office in New York City to discuss and negotiate the terms of the agreement." Complaint, ¶ 100.

When compared with the extensive allegations regarding events and activities that took place in Maryland involving the operations of K4 and Vetro, the two alleged meetings in New York City cannot credibly be characterized as a "substantial part of the events or omissions giving rise to the claim." Therefore, because the events giving rise to the claims herein took place almost entirely in Maryland, venue in the Southern District of New York is improper under section 1391(b)(2), and this action must be dismissed.

**C.    The Forum-Selection Clauses are Unenforceable**

Plaintiffs assert that venue is proper in the Southern District of New York because of forum-selection clauses in (i) the "Credit and Security Agreement" and (ii) the "Amended and Restated Guarantee and Pledge Agreement," designating this district as the jurisdiction for any

claim or controversy relating thereto. *See* Complaint, ¶ 6. The enforceability of a forum-selection clause is determined by asking:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.

*Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016)(quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir.2014). However, even if the clause in question meets all of the above-criteria, the presumption of validity can be overcome by a showing that the "clause was invalid for such reasons as <u>fraud</u> or overreaching." *Id* (emphasis added).

### i.      The Credit and Security Agreement

The forum-selection clause in the Credit and Security Agreement (the "CSA") is clearly unenforceable because none of the Defendants in this action are parties to the CSA, and Plaintiffs do not allege it is binding on them otherwise. The CSA is "among K-4 Associates, LLC (as Borrower), Three Streams Radius, LLC n/k/a BCIF (as Lender) and FCS Advisors LLC (as Loan Servicer)." Complaint, ¶ 42. Further, Plaintiffs do not allege that the CSA was ever communicated to Defendants, reasonably or otherwise. Put simply, Defendants are not "subject to the forum selection clause" in the CSA. *Gordian*, 168 F. Supp. 3d 581.

### ii.      The Amended and Restated Guarantee and Pledge Agreement

Unlike the CSA, Plaintiffs allege that Vetro was a party to the Amended and Restated Guarantee and Pledge Agreement (the "Amended Guarantee"). *See* Complaint, ¶ 50. (A true and correct copy of the Amended Guarantee is attached as Exhibit B). However, the forum-selection clause in this agreement is unenforceable because the agreement itself is fraudulent. *Gordian*, 168 F. Supp. 3d at 581. Jeffrey Kozero ("Kozero") fraudulently signed the agreement on behalf

of Vetro, without any authority to do so.  In reference to the Amended Guarantee, Jennings avers that "neither Cibrian, Kozero, nor anyone else disclosed the fact that Kozero also executed a guarantee in Vetro's name of repayment of all loans from Brevet to K4."  *See* Affidavit of Jeffrey A. Jennings (the "Jennings Affidavit"), ¶ 56, a true and correct copy of which is attached as Exhibit C.  Jennings further avers that "[u]nder <u>no</u> circumstances would I <u>ever</u> have consented to a guarantee of $14 million of K4 and Kozero's debt, merely to obtain an investment of $3.5 million—especially when I had alternative investors to capitalize my company."  *See* Jennings Affidavit, ¶ 57. (emphasis in original).  Thus, because Kozero executed the Amended Guarantee while purporting to represent Vetro, but without any ownership interest in Vetro or any authority to sign on its behalf, the document is fraudulent.  As such, the forum-selection clause in the Amended Guarantee is unenforceable. *See Gordian*, 168 F. Supp. 3d at 581.

Because the clauses in both the CSA and the Amended Guarantee are unenforceable, the clauses provide no basis for venue to lie in the Southern District of New York.  Accordingly, the Complaint should be dismissed.

## II.     Alternatively, This Action Should Be Transferred To The District of Maryland

For the reasons discussed above, the Complaint should be dismissed due to improper venue.  However, if this Court chooses not to dismiss the Complaint, it is respectfully submitted that this action must be transferred to the District of Maryland, Southern Division.

When a case is brought in an improper district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  § 1406(a). The decision to transfer a case is within the discretion of the district court. *Minnette v. Time Warner*. 997 F.2d 1023, 1026 (2d Cir.1993); *Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013).  The Southern District of New York applies a two-part test when deciding motions to transfer.  "First, the transferee

district must be one where jurisdiction over the defendant could have been obtained . . . . Second, the transfer must be in the interest of justice and convenience of the parties and witnesses." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016).

The first part of the test is satisfied if "venue would have been proper [in the transferee forum] and the defendants would have been amenable to personal jurisdiction in the transferee forum when the action was initiated." *Balance Point Divorce Funding, LLC v. Scrantom*, 978 F. Supp. 2d 341, 355 (S.D.N.Y. 2013); *Wang v. Phoenix Satellite Television US, Inc.,* No. 13-CV-218 (PKC), 2014 WL 116220, at *2 (S.D.N.Y. Jan. 13, 2014). Here, all parties agree that the defendants "might have been" sued in Maryland -- Plaintiffs' assertion of diversity jurisdiction is based upon its assertion that Vetro, Jennings, and Burkindine are citizens of Maryland. *See* Complaint, ¶ 1-4. Moreover, as discussed in Section I.B, *supra*, the events giving rise to this action took place in Maryland. Because it is clear that this action could have been brought in the District of Maryland, the only issue is whether the interests of justice and the convenience of parties and witnesses would be served by a transfer.

The second part of the test, whether the transfer is "in the interest of justice and convenience of the parties and witnesses," is subject to a balancing of several factors, including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

### A.   <u>Convenience of Parties and Witnesses</u>

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Indian Harbor Ins. Co. v. Factory Mut. Ins.*

*Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); *see also In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (witness convenience is "the essential criteria").  Here, none of the defendants reside in the Southern District of New York, and would be forced to travel several hours from their homes to appear for testimony.  As asserted in the Complaint, both Jennings and Burkindine are citizens of Maryland.[4]  *See* Complaint, ¶ 3.  In addition, several non-party witnesses whom Defendants would call to testify would be inconvenienced by travel to the Southern District of New York, and the "convenience of non-party witnesses is weighed more heavily than that of party witnesses." *Indian Harbor*, 419 F. Supp. 2d at 402.  *See* Affidavit of Patricia Harris (the "Harris Affidavit"), a true and correct copy of which is attached as Exhibit E.  Deborah Gladstone is a resident of Maryland.  *See* the Affidavit of Deborah Gladstone (the "Gladstone Affidavit"), a true and correct copy of which is attached as Exhibit F. Donald W. Taylor, III is a resident of Maryland.  *See* Affidavit of Donald W. Taylor, III (the "Taylor Affidavit"), a true and correct copy of which is attached as Exhibit G.  James L Hilderbrand is a resident of Maryland, and moreover, he is suffering from serious health problems that would make travel onerous.  *See* Affidavit of James L. Hilderbrand (the "Hilderbrand Affidavit"), ¶ 1, a true and correct copy of which is attached as Exhibit H.

### B.   Locus of Operative Facts

The locus of operative facts is a "primary factor" in evaluating a motion to transfer venue, which "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *Spiciarich v. Mexican Radio Corp.,* No. 14-CV-9009-SHS, 2015 WL 4191532, at *6 (S.D.N.Y. July 10, 2015); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,* 928 F. Supp. 2d 735, 745 (S.D.N.Y.

---

[4]        In fact, Burkindine is a citizen of Pennsylvania.  *See* Affidavit of Arthur Burkindine, Jr. (the  "Burkindine Affidavit"), a true and correct copy of which is attached as Exhibit D.

2013).   As discussed at length in Section I.B, *supra*, the operative facts in this matter substantially all took place in the District of Maryland.

### C.    Plaintiffs' Choice of Forum

Generally, a "plaintiff's choice of forum is entitled to considerable weight."  *Viera v. Basf Catalysts LLC*, No. 15-CV-3952-JPO, 2015 WL 9302836, at *6 (S.D.N.Y. Dec. 21, 2015).  However that "presumption does not apply in cases such as this one where there is little material connection between the chosen forum and the facts and issues of the case."  *Everlast* 928 F. Supp. 2d 748; *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010)(weight accorded to plaintiff's choice of forum is "diminished" where "the operative facts have little or no connection with the forum chosen by the plaintiff").   As discussed at length in Section I.B, *supra*, substantially all of the operative facts in this matter took place in the District of Maryland, and, thus, Plaintiffs' choice of venue is entitled to little weight.

### D.    Location of Relevant Documents

The location of relevant documents is entitled to little weight because "documents may be transferred from one district to another district across the country with little difficulty, using electronic means of duplication and transmission.  *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 JPO, 2015 WL 3767445, at *7 (S.D.N.Y. June 17, 2015)(quoting *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 481 (S.D.N.Y. 2009)).  However, to the extent that this factor carries any weight, it favors transfer.  Most, if not all, of the relevant documents are located in the offices of non-party K4, whose office is Maryland.

### E.    Availability of Process to Compel the Attendance of Unwilling Witnesses

If neither party "asserts that a witness will be unwilling to testify voluntarily, the availability of process to compel testimony is irrelevant" to the balancing test.  *Rosen v. Ritz-*

*Carlton Hotel Co. LLC*, No. 14-CV-1385 RJS, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015). At this early stage of the litigation, Defendants are not yet in a position to determine whether any non-party witnesses will be unwilling to testify, but it is worth noting that the witnesses discussed in Section II.A, *supra*, may be outside of this Court's subpoena power. *See* Rule 45 (nonparties may be subpoenaed for trial, hearing, or deposition only within 100 miles of where the person resides, is employed, or regularly transacts business). Virtually all of Maryland is more than 100 miles from New York.

### F.      Relative Means of the Parties

Defendants are not submitting documentation showing that travel to New York to defend this action "would be unduly burdensome to [their] finances." *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 03–CV–7157 (WHP), 2004 WL 1368299, (S.D.N.Y. June 16, 2004). Defendants respectfully submit, however, that the relative means of the hedge-fund Plaintiffs are greater than the Defendants.

The District of Maryland is a proper venue for this action, and the balancing test discussed above weighs heavily in favor of transferring the case. Therefore, based on the foregoing, if the Complaint is not dismissed, this action should be transferred to the District of Maryland, Southern Division.

### III.    The Complaint Must be Dismissed Because Plaintiffs Have Failed To Join A Necessary And Indispensable Party: K4

#### A.      Standard on Motion to Dismiss for Nonjoinder

Under Rule 19, the "burden is on the party raising the defense to show that the person who was not joined is needed for a just adjudication." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F.Supp.2d 446, 455 (S.D.N.Y.2010). However, "[i]f the initial assessment reveals the possibility that an unjoined party is required to be joined under

Rule 19, the burden shifts to the opposing party to negate this conclusion." *United States v. Sweeny*, 418 F.Supp.2d 492, 499 (S.D.N.Y.2006) (citation omitted).

**B.      K4 is a Necessary Party**

K4 is a necessary party because K4 borrowed funds from Plaintiffs, and used that money to make an investment in Vetro.  Vetro has no direct relationship with Plaintiffs, and Vetro's obligations to repay those funds, and the resolution of other claims related thereto, are matters which can only be fully resolved if K4 is a party to the litigation.  K4 also has an interest relating to the subject of the action, and litigating the action to its conclusion in K4's absence would impair K4's ability to protect those interests.  *See* Rule 19(a)(B)(i).  Plaintiffs aver that "[i]n connection with that federal program, [Brevet] has loaned funds to non-party K-4 Associates, LLC ("K-4"), which funds are at issue in this litigation."  Complaint, ¶ 8 (emphasis added). More specifically, Plaintiffs assert that "Defendants have unjustly enriched themselves by absconding with $3,100,000 that Brevet loaned to K4 and transferring those funds to Vetro bank accounts, which they purport to control, in exchange for nothing and under false pretenses, while leaving K4 with the obligation to repay the Brevet Loan."  Complaint, ¶ 91 (emphasis added).

Plaintiffs seek to recover all of the monies loaned to K4 from Defendants, which they allegedly "stole."  *See* Complaint, generally.  At the same time, Plaintiffs also assert that K4 has an "obligation to repay the Brevet Loan."  *See* Complaint, ¶ 91.  Should Plaintiffs directly recover all of the monies loaned to K4 as damages from Defendants, K4's "obligation to repay the Brevet Loan" would not necessarily be extinguished.  *Id*.  If K4 is not a party to this action, it would not have an opportunity to protect its interests and recover sums allegedly due from Defendants with which to repay the Brevet loan.  Therefore, if K4 is not joined, its interest in the allegedly stolen loan monies and its ability to repay Brevet on said loans would be substantially impaired.

C.    **K4 Cannot Be Joined**

The gravamen of this action is an allegation that Defendants stole approximately

$3,100,00 from K4, and, therefore, not only is K4 a necessary party, it must be aligned as a

plaintiff.[5]   K4 is a Maryland limited liability company, and at least one of its members, Jeffrey

Kozero, is also a resident of Maryland.  Because Kozero, individually, is a Maryland citizen, and

limited liability companies have "the citizenship of [their] membership" for federal diversity

purposes (i.e. they are citizens of each state in which at least one of their members is a citizen),

there would be no diversity of citizenship conferring federal jurisdiction over this action if K4

were a plaintiff.  *Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 51-52

(2d Cir. 2000).  K4, like two of the defendants, Vetro and Jennings, are residents of Maryland.[6]

Because Vetro and Jennings are non-diverse with K4, K4 cannot be joined pursuant to

Fed.R.Civ.P  19 and 20.  Additionally, K4 is not subject to supplemental federal jurisdiction,

because:

> In any civil action of which the district courts have original
> jurisdiction founded solely on section 1332 of this title, the district
> courts shall not have supplemental jurisdiction under subsection (a)
> over claims by plaintiffs against persons made parties under Rule
> 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over
> claims by persons proposed to be joined as plaintiffs under Rule 19
> of such rules, or seeking to intervene as plaintiffs under Rule 24 of
> such rules, when exercising supplemental jurisdiction over such
> claims would be inconsistent with the jurisdictional requirements
> of section 1332.

---

[5]    Parties must be aligned "according to their real interest," not so as to preserve diversity jurisdiction.  *Maryland Cas. Co. v. W.R. Grace and Co.*, 23 F.3d 617, 622 (2d Cir. 1993)(citing *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63 (1941).

[6]    Plaintiffs aver that Jennings and Burkindine are both citizens of Maryland.  *See* Complaint, ¶ 3.  In fact, Burkindine is a citizen of Pennsylvania.  *See* Burkindine Affidavit.  However, his actual citizenship for the purpose of determining diversity is irrelevant since Jennings is a citizen of Maryland.

13

28 U.S.C.. § 1367(b); *see also Balestriere PLLC v. CMA Trading, Inc.*, No. 11 Civ. 9459-MHD, 2014 WL 929813, at *20-21 (S.D.N.Y. March 6, 2014) (holding that § 1367 prevented the Court from exercising supplemental jurisdiction over non-diverse parties). Thus, under no circumstances can K4 be joined in this action.

### D.   K4 Is an Indispensable Party

As discussed above, K4 is a necessary party and its joinder is impossible.  Additionally, the application of the test set forth in Rule 19(b) reveals that K4 is also an indispensable party, such that the Complaint must be dismissed. The factors under Rule 19(b) are:

> (1)   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)   the extent to which any prejudice could be lessened or avoided by:
>
>> (A)   protective provisions in the judgment;
>>
>> (B)   shaping the relief; or
>>
>> (C)   other measure;
>
> (3)   whether a judgment rendered in the person's absence would be adequate; and
>
> (4)   whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

K4 risks substantial prejudice if a judgment is rendered in its absence, as discussed in Section III.B, *supra*, and because K4's risk of prejudice relates to money damages, it would be difficult for the Court to fashion injunctive or other relief to lessen or avoid said prejudice. Additionally, a judgment rendered in K4's absence would be inadequate because it would leave Brevet's potential claims against K4 unresolved.  Finally, Plaintiffs would have an adequate remedy if this action is dismissed for nonjoinder -- they could pursue their claims in the state courts of Maryland.  Plaintiffs' choice of venue in this action was borne of forum-shopping,

rather than necessity, and runs counter to the principles of judicial economy and fairness. This action would be better heard by a Maryland state court, before which K4 could appear. Therefore, Defendants respectfully submit that the Complaint must be dismissed.

## IV.   In The Alternative, The Complaint Must Be Dismissed For Failure To State A Claim Pursuant To Federal Rule 12(b)(6)

### A.   Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal of a complaint, in lieu of filing an answer, for the "failure to state a claim upon which relief can be granted."   In deciding a motion to dismiss under Rule 12(b)(6), this Court's role "is to assess the legal feasibility of the plaintiff's claims." *Schwartz v. Washington Mut., Inc.*, 487 F. Supp. 2d 236, 238 (E.D.N.Y. 2007) (citations omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, *citing Twombly*, 555 U.S. at 570.

In considering a Rule 12(b)(6) motion, the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, a court need not accept as true "legal conclusions, deductions or opinions couched as factual allegations." *In re NYSE Specialist Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal quotations omitted).

Thus, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Pursuant to the Federal Rules of Civil Procedure, a complaint must be dismissed where a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed.R.Civ.P.

12(b)(6).  To avoid dismissal, it is incumbent on a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As the Supreme Court held, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  Indeed, this Court has repeatedly recognized the principle that a pleading should be dismissed where a party has failed to sufficiently state facts in support of a cause of action. *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F.Supp. 2d 569 (S.D.N.Y. 2011).

### B.  The Complaint Fails to State a Claim for Fraudulent Inducement

To state a claim for fraudulent inducement, Plaintiffs must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochesters,* 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted).  Rule 9(b) requires that a claim for fraud be pled with specificity, namely that the plaintiff "specify the statements that he contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Mills v. Polar Mechanical Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993).  Additionally, a plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood Inc.,* 385 F.3d 159, 179 (2d Cir. 2004).  "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

16

recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) (*quoting Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiffs' fraudulent inducement claim is rooted in their assertion that Defendants misled them into believing that Vetro was a wholly-owned subsidiary of K4. *See* Complaint, ¶¶ 60-69. However, the Complaint does nothing more than set forth bald conclusory allegations to that effect. For example, at Paragraph 60 of the Complaint, Plaintiffs state, without any supporting facts, that "[d]uring the negotiations of the Brevet Loan, Jennings . . . intentionally misled Brevet and caused it to believe that K4 had a windows installation business or wholly owned windows installation subsidiary known as Vetro Building Envelope, LLC." Plaintiffs do not – and cannot – identify precisely what representations Jennings made or what actions Jennings took to lead Brevet into believing that K4 owned Vetro. Instead, the best Plaintiffs can do is muster a flimsy allegation that Jennings and Burkindine operated Vetro using K4 employees. *See* Complaint, ¶ 63. Taking this allegation as true, it does not remotely suggest that Jennings and/or Burkindine were engaged in any "intentional" scheme directed at Brevet, and it certainly does not establish the requisite strong inference of fraudulent intent that Plaintiffs must show to satisfy the heightened pleading standard of Rule 9(b).

Because Plaintiffs' fraudulent inducement claim is clothed in nothing more than conclusory statements and illogical inferences, Plaintiffs have failed to state a claim for fraudulent inducement, and Count I must be dismissed.

### C. The Complaint Fails to State a Claim for Tortious Interference with Contractual Relations

To state a claim for tortious interference with a contract, Plaintiffs must show "that a valid contract existed which a third party knew about, the third party intentionally and improperly procured the breach of the contract and the breach resulted in damage to the plaintiff." *Clearmont Prop., LLC v. Eisner*, 58 A.D. 3d at 1055, 872 N.Y.S.2d 725 (citation

omitted).  Courts consistently dismiss claims for tortious interference where, as here, a complaint alleges no supporting facts to demonstrate the wrongful acts.  *See, e.g., NBT Bancorp v. Fleet/Norstar Fin. Group.* 159 A.D. 2d 902, 903-904, 553 N.Y.S.2d 864 (3d Dep't 1990) (affirming grant of motion to dismiss claim for tortious interference because complaint failed to sufficient plead acts that allegedly induced breach of subject contract); *Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 360 (S.D.N.Y. 2001) (dismissing claim for tortious interference with contract unsupported by factual allegations detailing how third parties breached contract or how defendants caused that breach).

Plaintiffs' tortious interference claim is flawed for at least three reasons.  First, the Complaint does not set forth any facts as to how (or if) K4 has breached its contract with Brevet, or that Defendants were the "but for" cause of any alleged breach.  Indeed, the Complaint sets forth no detail about the terms of K4's contract with Brevet (other than Brevet loaned money to K4 which K4 was obligated to repay).  Furthermore, Plaintiffs <u>do not</u> allege that K4 breached the contract.  Instead, they assert K4's ability to perform under the Credit and Security Agreement has been "<u>negatively impacted</u>."  *See*  Complaint, ¶ 127.  In the absence of allegations detailing Plaintiffs' rights and obligations under the alleged contracts, and how K4 breached the contract, Plaintiffs' complaint cannot withstand a motion to dismiss.  *Wolf*, 171 F.Supp.2d at 360; *Baylis v. Marriott Corp.*, 906 F.2d 874 (2d Cir. 1990).

Second, beyond the conclusory allegation that Defendants' "conduct [was] intentional and unjustified, and calculated to cause damage to Plaintiffs' lawful business," Plaintiffs have set forth <u>no facts</u> to explain their conclusory allegation that any of the Defendants intentionally induced K4 to breach its contract with Plaintiffs.  *See* Complaint, ¶ 126.  In the absence of such facts, Defendants motion to dismiss must be granted.  *See Fitzpatrick Constr. Corp. v. County of Suffolk*, 138 A.D. 2d 446, 525 N.Y.S.2d (2d Dep't. 1998.

Because Plaintiffs have failed to adequately allege the required elements of a tortious interference claim, Count III must be dismissed.

### D.      The Complaint Fails to State a Claim for Unjust Enrichment

"A cause of action for unjust enrichment is stated where plaintiffs have properly asserted that a benefit was bestowed . . . by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs therefor' . . . ."  *Murphy v. 317-319 Second Realty LLC*, 95 A.D. 3d 443, 446, 944 N.Y.S.2d 42, 45 (1st Dep't. 2012) (citation omitted).  Plaintiffs' unjust enrichment claim is based on their allegation that "Defendants caused funds from the Brevet Loan to be transferred to their own company, Vetro, in exchange for nothing."  Complaint, ¶ 134.   The critical element missing from Plaintiffs' unjust enrichment claim is that Plaintiffs did not confer a benefit on Defendants.

This missing element is s acknowledged by Plaintiffs in Paragraph 130 of the Complaint wherein they allege that "Plaintiffs conferred a benefit on K-4 in the form of the Brevet Loan." K4, in turn, invested the borrowed money in Vetro.  Accordingly, Plaintiffs did not loan any money directly to Defendants.  In the absence of any allegations that Plaintiffs conferred a benefit on any of the Defendants, Plaintiffs' unjust enrichment claim must be dismissed.  *Aymes v. Gateway Demolition, Inc.*, 30 A.D. 3d 196, 197, 817 N.Y.S. 2d 233, 234 (1st Dep't 2006) ("[t]o the extent plaintiff is asserting an unjust enrichment claim, he lacks standing because neither he nor previous property owner bestowed a benefit on defendants.").

### E.      The Claim for Conversion as it Pertains to Jennings' Alleged Transfer of Funds Should be Dismissed for Failure to State a Claim

The elements of a cause of action in conversion are: (1) the plaintiff's right to possession, (2) the intent of the defendant, and (3) the defendant's interference with the plaintiff's property rights to the exclusion of the plaintiff's rights.  *Meese v. Miller*, 79 A.D. 2d 237, 436 N.Y.S. 2d 496 (4th Dep't. 1981).   Plaintiffs contend that "Jennings and Burkindine fraudulently and

wrongfully converted K-4's funds from the Brevet Loan" when Jennings allegedly transferred the funds from the Eagle Bank Account to the M&T Account.  *See* Complaint, ¶¶ 84, 87.  As an initial matter, Plaintiffs do not allege any facts (beyond conclusory allegations) as to how Burkindine was involved in the alleged transfer of funds to the M&T accounts.  For that reason, Burkindine should be dismissed from Count II.  Furthermore, Count II should be dismissed because Plaintiffs do not set forth any facts that Defendants intended to interfere with Plaintiffs' alleged property rights in the loan funds, or that the transfer of the funds to the M&T account has actually interfered with Plaintiffs' rights in the funds.

> **F.**   **Plaintiffs' Claim for Conversion as it Pertains to Jennings' Alleged Misappropriation of K4 Funds Should be Dismissed for Failure to State a Claim**

To assert a claim for conversion of money, it must be shown that the money in issue resided in "a specific identifiable fund and [there was] an obligation to return or otherwise treat in a particular manner the specific fund in question."  *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 125, 559 N.Y.S.2d 704 (1st Dept. 1990).  In other words, the money that is alleged to have been converted must be "specifically identifiable and segregated" for a specifically identifiable purpose.  *Id.*; *see also, The High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420 (E.D.N.Y. 1998).  If, however, "the allegedly converted money is incapable of being described or identified in the same manner as specific chattel . . . . it is not the proper subject of a conversion action."  *9310 Third Ave. Assoc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 208, 620 N.Y.S.2d 255 (2d Dept. 1994).

As support for their conversion claim, Plaintiffs allege that Jennings misappropriated their "collateral" for the Brevet loan by making certain "unauthorized" transactions and purchases.  *See* Complaint, ¶¶ 93, 94, 118.  The "collateral" to which Plaintiffs refer is identified in Paragraph 42(c) of the Complaint as "K-4's assets, including its bank accounts."  Through

their artful pleading, Plaintiffs have attempted to assert a conversion claim based upon their (patently false) allegation that Jennings misused monies that were sitting in K4's bank accounts. The Complaint, of course, does not allege that the money that was in K4's "bank accounts" was specifically identifiable and segregated for any one purpose.  For that reason alone, Plaintiffs' claim for conversion with respect to Jennings' alleged misuse of K4's funds is not cognizable and should be dismissed.

### G.    The Complaint Fails to State a Claim for Breach of Contract

Plaintiffs' breach of contract claim is premised on the alleged preliminary negotiations between them and Jennings for the re-payment of the $3.1 million loan which culminated in a "partially memorialized" "representation" between Jennings and K4 dated June 27, 2016.  *See* Complaint, ¶¶ 99-103.  For a contract to exist, there must be offer and acceptance supported by consideration.  *Tarowski v. American Airlines*, *Inc.*, 2002 WL 31956009 (E.D.N.Y. 2002). "It is a basic tenet of contract law that in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'"  *Hines v. Overstock.com*, 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009).

As pled, the Complaint does not allege that the parties' negotiations over the repayment of the $3.1 million ever culminated in an enforceable agreement.  Rather, Plaintiffs merely allege that their negotiations culminated in a unilateral representation by Jennings to K4 "acknowledging that Vetro had committed to certain repayment terms under a defined debt structure and payment plan."  *See* Complaint, ¶101. Because there is no agreement alleged to have been formed between Jennings and Plaintiffs – but rather just between Jennings and K4 – there can be no claim for breach of contract.

Furthermore, to the extent that Plaintiffs attempt to rely on the "negotiations" alleged in Paragraphs 99 to 103 of the Complaint relating to the parties' negotiations, their claim likewise

fails. *Joseph Martin, Jr., Deli v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E. 2d 541 (1981) (definiteness of material terms is essential element of contract, and mere agreement agree in the future on vague uncertain terms not enforceable).   Because Plaintiffs have not pled in their Complaint the objective signs of an offer, acceptance, and consideration, there can be no claim for breach of contract. *Mondo, Inc. v. Sirco Int'l. Corp.*, 1998 WL 849401, at *12 (S.D.N.Y. 1998).   Accordingly, Count V must be dismissed.

### H.   Plaintiffs' Claims for "Breach of Contract – Amended Guarantee" and "Declaratory Judgment – Amended Guarantee" Should Be Dismissed For Failure to State a Claim

Counts VI and VII of the Complaint is based on the alleged December 3, 2015 "Amended Guarantee" entered into by K4 purporting to act as owner of Vetro.  Plaintiffs' claims should be dismissed because K4 had neither actual nor apparent authority to enter into the amended guarantee.

"Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on his power, either explicitly or implicitly."  *Highland Capital Mgmt. v. Schneider,* 607 F.3d 322, 327 (2d Cir. 2010) (citation omitted).  Where an agent lacks actual authority, "he may still be imbued with the authority to bind the principal through the doctrine of apparent authority . . . if the principal has created the appearance of authority, leading the other contracting party to believe actual authority exists." *Themis Capital, LLC v. Democratic Republic of Congo*, 881 F.Supp.2d 508, 522 (S.D.N.Y. 2012) (citation omitted).

The Complaint alleges that Vetro's two principals are Jennings and Burkindine, who created Vetro on November 26, 2014 by filing articles of organization with the State of Maryland.  *See* Complaint, ¶ 22.   The Complaint does not set forth any basis from which to conclude that any principals or executives of K4 – other than Jennings – had authority to bind

Vetro.  On the contrary, it is clear from the face of the Complaint that K4 fraudulently held itself out as the owner of Vetro by, among other things, creating marketing materials wherein it purported to assert ownership over Vetro, despite it not having filed articles of organization or undertaking any effort to establish a legal interest in Vetro.  *See* Complaint, ¶¶ 27, 30,37. Therefore, Plaintiffs' claim that K4 had actual authority to bind Vetro to the Amended Guarantee is entirely specious.

So too is Plaintiffs' assertion that K4 had apparent authority to bind Vetro.  Absent from the Complaint are any allegations that Jennings and/or Burkindine made any representations to Plaintiffs that K4 was an authorized representative empowered to enter in a multi-million dollar loan agreement on Vetro's behalf.  Instead, Plaintiffs merely assert that "[a]s contemplated in the 2015 and 2016 Business Plans, Brevet and K4 believed and understood that Vetro was K4's wholly-owned subsidiary . . . ."  *See* Complaint, ¶ 48.  First, the 2016 business plan post-dated the Amended Guarantee (dated December 3, 2015), and so the 2016 business plan cannot be a basis upon which to assert apparent authority.  Second, with respect to the 2015 business plan, it is telling that the Complaint does not allege: (a) that Plaintiffs were aware of the 2015 business plan at the time of the Amended Guarantee; (b) that they relied upon the false statement apparently contained within the 2015 business plan that Vetro was wholly-owned by K4; or (c) that Jennings had any hand in making the false representation contained within the 2015 business plan that K4 was the owner of Vetro.  In the absence of such allegations, Plaintiffs' claims arising out of the Amended Guarantee must be dismissed. *Reiss v. Societe Centrale du Group Des Assurances Nationales,* 235 F.3d 738, 748 (2d Cir. 2000) ("apparent authority depends on some conduct by the principal, communicated to a third party, which reasonably gives the appearance that the agent has authority to conduct a particular transaction.").

## V.      **CONCLUSION**

Based upon the foregoing, the Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue, or alternatively, transferred to the District of Maryland, Southern Division. In the event the Court deems that venue is appropriate in this District, the Complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join a necessary and indispensable party, or in the alternative, for failure to state a claim pursuant to Federal Rule 12(b)(6).

  /s/ Thomas E. Raccuia
Carol A. Sigmond, Esq.
Thomas E. Raccuia, Esq.

*Of Counsel:*
Kenneth B. Frank, Esq.
KENNETH B. FRANK, PA
1808 Dixon Road
Baltimore, Maryland
(443) 345-2600
kenny@kennyfrank.net